IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ENNIS UNITA MCWHORTER,

     Plaintiff,

v.

TRANSUNION LLC; NELNET
SERVICING LLC; EXPERIAN
INFORMATION SOLUTIONS, INC.,

     Defendants.

CIVIL ACTION FILE NO.
1:21-cv-01753-SDG-LTW

## MAGISTRATE JUDGE'S ORDER AND
## REPORT AND RECOMMENDATION

This matter appears before the Court on a Motion for Order ([Doc. 73]) and a Motion to Dismiss filed by Defendants ([Doc. 80]), as well as a bevy of motions filed by Plaintiff ([Docs. 81, 88, 89, 91]). For the following reasons, the Motion for Order ([Doc. 73]) is **GRANTED** *nunc pro tunc*, Plaintiff's Motion to Correct a Clerical Mistake ([Docs. 88]) is also **GRANTED** *nunc pro tunc*, Plaintiff's other Motions ([Docs. 81, 89, 91]) are **DENIED**, and the undersigned **RECOMMENDS** that the Motion to Dismiss ([Doc. 80]) be **GRANTED in part and DENIED in part**, as explained below.

## PRELIMINARY MATTERS

Plaintiff filed her initial Complaint on April 28, 2021. [Doc. 1]. Less than twenty-one days after the Complaint was served, Plaintiff amended as of right. [Docs. 18, 20]; Fed. R. Civ. P. 15(a)(1)(A). In July 2021, Defendants moved to dismiss the Amended Complaint, arguing in part that repleading was necessary because the Amended Complaint was a shotgun pleading with "vague, generalized, conclusory" allegations. [Doc. 24-1 at 6–9]. In light of Plaintiff's *pro se* status, the undersigned recommended that Plaintiff be given an opportunity to replead. [Doc. 50]. Before District Judge Steven D. Grimberg ruled on that recommendation, Plaintiff attempted to file a second amended complaint. [Doc. 56]. Defendants moved to strike that document as improperly filed, and the undersigned granted Defendants' motion, explaining that "the Court has not yet entered an order granting Plaintiff leave to amend." [Doc. 61].

On November 29, 2021, Judge Grimberg entered an Order giving Plaintiff fourteen days in which to amend her complaint. On December 13, 2021, Defendants moved to dismiss the previously filed Second Amended Complaint, and Plaintiff filed a new Second Amended Complaint. [Docs. 68, 69]. Two days later Plaintiff moved for leave to amend her complaint again. [Doc. 70]. The undersigned detailed a host of

problems with Plaintiff's Amended Complaint(s) and granted her leave to amend, noting that if she timely did so the December 2021 Motion to Dismiss would be moot. [Doc. 71]. Defendants move for an Order clarifying that they did not need to further respond to Plaintiff's Second Amended Complaint ([Doc. 69]) because of the granting of the subsequent Motion for Leave to Amend. [Doc. 73]. Defendants' Motion is **GRANTED**, *nunc pro tunc*. [Doc. 73].

On December 30, 2021, Plaintiff filed three, separate "Statement of Claim[s]," one for each Defendant, which are collectively construed as a Third Amended Complaint. [Docs. 74, 75, 76]. On January 13, 2022, Defendants again moved to dismiss. [Doc. 80]. Plaintiff moves for default judgment—for the third time—arguing she is entitled to default judgment because Defendants "failed to file an answer." [Doc. 81]; see also [Docs. 31, 32, 59, 60]. As the undersigned has already explained to Plaintiff, a motion under Rule 12 alters the deadline for filing an answer. [Doc. 50 at 3]; see also Fed. R. Civ. P. 12(a)(4). Because Defendants timely moved to dismiss the Third Amended Complaint, they have no obligation to file an answer until 14 days after the Court rules on their motion—if it is denied. Fed. R. Civ. P. 12(a)(4)(A); see also Abdullah v. City of Jacksonville, 242 F. App'x 661, 663 (11th Cir. 2007) (holding that the plaintiff "was not entitled to a default judgment because, although the

defendant did not file an answer to his amended complaint, they filed a motion to dismiss"). As such, Defendants are not in default and Plaintiff's Motions for Default Judgment ([Doc. 81, 89]) are **DENIED**.

Plaintiff also filed a Motion to Correct a Clerical Mistake pursuant to Rule 60(a), noting that Defendant Experian Information Solutions Inc. ("Experian") was mistakenly listed as Experian Information Solutions, LLC in the caption of a prior order. [Doc. 88]. Plaintiff's Motion to Correct a Clerical Mistake ([Doc. 88]) is **GRANTED**, *nunc pro tunc*. Last, Plaintiff filed a Motion for an Extension of Time to File a Proposed Pretrial Order. [Doc. 71]. Plaintiff's motion is based on her mistaken belief that discovery began when the Court denied the initial motion to dismiss. See [id. at 2]. Discovery does not begin until "thirty days after the appearance of the first defendant by answer to the complaint, unless the parties mutually consent to begin earlier." N.D. Ga. Loc. R. 26.2(A). As noted above, Defendants have (properly) not answered any of the complaints, and Plaintiff does not assert the parties mutually consented to begin discovery before a ruling on the merits of Defendants' Motion to Dismiss. See [id.]. As such, discovery has not begun and the deadline for the Proposed Pretrial Order is still a long way off. See N.D. Ga. Loc. R. 16.4. Plaintiff's Motion for an Extension of Time to File a Proposed Pretrial Order ([Doc. 71]) is **DENIED as**

**moot**. Thus, the only motion remaining before the Court is the Motion to Dismiss.

## PLAINTIFF'S FACTUAL ALLEGATIONS

As noted above, Plaintiff filed three "Statement of Claim[s]," which she treats as a singular "Amended Complaint." [Docs. 74, 75, 76]; see also [Doc. 83 at 1]. Plaintiff has submitted numerous "Borrowers Defense to Loan Repayment" applications to avoid repaying federal student loans because the school "failed to perform [*sic*] reasonable accommodations for a distant learner to obtain a degree within a reasonable amount of time." See [Doc. 76]. Plaintiff submitted the first such application to Defendant Nelnet Servicing LLC ("Nelnet") in November 2017 and she alleges payments on the loans "would automatically stop" while the application was reviewed. [Id. at 2–3]. Plaintiff asserts "the review process" lasted until December 2019 when the application was denied. See [id. at 4].

Within a matter of days Plaintiff apparently submitted another "Borrower Defense to Repayment" application. See [id. at 4, 6]. Plaintiff would have received a forbearance beginning in April 2020, but before the forbearance was to begin the Department of Education determined Plaintiff's "application is ineligible for relief based on review of the facts of [her] claim and the regulatory criteria for relief." [Id. at 9–10]. Undeterred, Plaintiff keeps submitting additional "Borrower Defense to

5

Repayment" applications.  [Id. at 11]; see also [Doc. 75 at 4].  Plaintiff alleges the "scheduled payments" on her loans are inaccurately reported.  [Id. at 5].  Plaintiff disputed the loans with Equifax in December 2020, and Nelnet allegedly "verified [the disputed information] as accurate."  [Id. at 12].

As to Experian, Plaintiff alleges she somehow owes the Internal Revenue Service ("IRS") money based on "false information being reported by 'Experian' concerning student loans."  [Doc. 74 at 2].  Plaintiff also alleges she "was declined for housing by Experian" and that some unspecified "information was false" but that Experian responded by "stating that the information was valid."  [Id. at 2–3].  Whatever the allegedly "false information" was, it was removed prior to this suit.  [Id. at 3].  The crux of Plaintiff's claims against Experian is again the supposedly "false scheduled payments" on her student loans.  [Id. at 3–4].  Plaintiff also alleges her last payment on a Westlake Financial loan "was $10,541.43" in March 2017, but that Experian reported "the last payment as $352.00." [Id. at 7].  Plaintiff "disputed this information" and Experian "changed the payment amount" at some point, although Plaintiff fails to explain or indicate the new payment amount.  [Id.].  Last, Plaintiff claims that she "requested her full credit profile" in February 2021 and that Experian did not provide it, even though her Third Amended Complaint attaches most of a document from

6

February 2021 entitled "Annual Credit Report –Experian." [Id. at 6]; see also [id. at 13–66].

Plaintiff's allegations against Defendant Trans Union, LLC ("Trans Union") are largely the same. Plaintiff contends Trans Union is incorrectly reporting "scheduled payments" on the student loans even though "she did not schedule payments." [Doc. 75 at 7]. She claims she last made a payment of "$10,521.42" to Westlake Financial but Trans Union reported the amount as "$352.00." [Id. at 10]. Plaintiff also contends she "requested her full fill [sic]" from Trans Union and "never received it," but again Plaintiff attaches to her Third Amended Complaint substantial portions of two different Trans Union credit reports. [Id. at 11]; see also [id. at 21–43]. It is difficult to tell what claims Plaintiff is trying to bring because she treats almost all the paragraphs of her Third Amended Complaint as "Count[s]." [Docs. 74, 75, 76]. As best the Court can tell, Plaintiff tries to bring claims under the Fair Credit Reporting Act ("FCRA") and claims for "fraud" against each Defendant. See [Doc. 74 at 9–10]; [Doc. 75 at 17–18]; [Doc. 76 at 13].

## LEGAL STANDARD

When deciding whether to dismiss for failure to state a claim, the Court accepts the factual allegations in the complaint as true and construes them in the light most

favorable to the plaintiff.  Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010).  A complaint fails to state a claim when the facts as pled do not state a claim that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  Because the purpose of Rule 8(a) is to provide notice to the defendants of the nature of the claims and the grounds on which those claims rest, pleadings are given a liberal reading when addressing a motion to dismiss.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

In order to state a plausible claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  "[W]hile notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007) (internal quotations omitted).  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

## ANALYSIS

As an initial matter, Plaintiff's response to the Motion to Dismiss is forty-three pages long. [Doc. 83]. The Court's Local Rules provide that responses to motions "are limited in length to twenty-five (25) pages." N.D. Ga. Loc. R. 7.1(D). Again, the undersigned "recognizes that a party proceeding *pro se* (without an attorney), like Plaintiff, is likely unfamiliar with the Federal Rules of Civil Procedure, the Court's Local Rules, and the various statutory and common-law authority that govern the proceedings in this matter." [Doc. 50 at 5]. But the Court specifically warned her that "she must follow the Federal Rules of Civil Procedure and the Local Rules of this Court." [Id.]; see also Loren v. Sasser, 309 F.3d 1296, 1304 (11th Cir. 2002) (holding that *pro se* parties are required "to conform to procedural rules). The undersigned told Plaintiff she needed to "be familiar with the rules" and told her where to get the necessary materials. [Doc. 50 at 5]. Plaintiff's excessively long response violates the Court's Local Rules and the Court's specific instructions. See N.D. Ga. Loc. R. 7.1(D); see also [Doc. 50 at 5]. Nevertheless, the Court will consider the entirety of the response, but this is to serve as Plaintiff's final warning that she is required to understand the rules of this Court and the Federal Rules of Civil Procedure. Future violations will not be treated so lightly.

9

In moving to dismiss, Defendants argues: (A) Plaintiff fails to establish subject-matter jurisdiction, (B) Plaintiff fails to establish standing, (C) Plaintiff's fraud claim fails, and (D) Plaintiff's FCRA claims fail.  [Doc. 80-1].[1]  The undersigned addresses each argument in turn.

## A.  <u>Subject-Matter Jurisdiction</u>

District courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "Whether a claim arises under federal law for purposes of 28 U.S.C. § 1331 is generally determined by the well-pleaded complaint rule, 'which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'"  <u>Smith v. GTE Corp.</u>, 236 F.3d 1292, 1310 (11th Cir. 2001) (quoting <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392 (1987)).  Here, Plaintiff quite clearly

---

[1] In a footnote, Defendants also contend Plaintiff has "failed to assert allegations of personal jurisdiction and venue."  [Doc. 80-1 at 9 n.4].  Courts need not consider issues raised "only in a footnote in a perfunctory and conclusory manner."  <u>Nat'l Mining Ass'n v. United Steel Workers</u>, 985 F.3d 1309, 1327 n.16 (11th Cir. 2021). Additionally, arguments regarding personal jurisdiction and venue are waived when a party files a Rule 12 motion without raising such a defense if it "was available to the party but omitted from its earlier motion."  Fed. R. Civ. P. 12(g)(2).  These defenses were previously available to Defendants but were not raised in either of the prior Motions to Dismiss.  <u>See</u> [Docs. 24-1, 68-1].

alleges federal question jurisdiction based on Defendants' alleged violations of the FCRA.  [Doc. 74 at 9].

Defendants correctly note that "references federal-law claims in a Complaint" are not enough "if a plaintiff fails to assert adequate facts on which to base those claims," but the case they rely on is inapposite.  [Doc. 80-1 at 10].  In Muhammad v. Muhammad, the complaint lacked "any factual details" and was largely "legalese with no substantial facts to establish grounds for [the plaintiff's] claims." 654 F. App'x 455, 457 (11th Cir. 2016).  As will be discussed below, Plaintiff alleges concrete facts that, if true, provide a basis for an FCRA claim.  To take one example, Plaintiff alleges she "requested her full credit profile" from Experian in February 2021 "and still has not received it." [Doc. 74 at 6].  If true, that fact would establish a claim under 15 U.S.C. § 1681g. Defendants' arguments regarding the alleged inadequacy of Plaintiff's factual allegations are discussed below, but they are sufficient to establish subject-matter jurisdiction.

## B.   **Standing**

Standing requires that a plaintiff "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, Inc. v. Robins, 578 U.S. 330, 338

(2016).   Defendants challenge only the second of these elements, arguing that Plaintiff's "alleged injuries lack the necessary connections to Defendants, what they allegedly did wrong, or how any of this supports Plaintiff's causes of action." [Doc. 80-1 at 10–11].   Defendants point to the undersigned's prior report and recommendation noting that Plaintiff needed to "plausibly connect the supposed inaccuracy [in her credit report] with her alleged injury," but Plaintiff's Third Amended Complaint does correct this deficiency.   See [Doc. 80-1 at 11 n.6].

Plaintiff previously speculated "that *if* [the IRS's] collection decision [was] based on [her] credit report" the decision may be based on "false statements." [Doc. 38 at 9] (emphasis added).   Plaintiff failed to allege the IRS's adverse actions *were* based on Plaintiff's credit report and, more importantly, failed to specifically tie the decision to the alleged inaccuracy "as opposed to something else in her credit report." [Doc. 50 at 11].   Here, by contrast, Plaintiff specifically alleges she "pays an excess in insurance and interest based off of fraudulent statements being reported to third parties." [Doc. 75 at 9].

As far as standing goes, Plaintiff's allegations are sufficient.   Article III standing does not require proximate causation, "even harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes."

Focus on the Fam. v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1273 (11th Cir. 2003) (noting that "*for standing purposes* [a plaintiff] is not required to prove causation beyond a reasonable doubt or by clear and convincing evidence" (emphasis in original)).  Because Plaintiff has asserted an injury in fact that is allegedly traceable to Defendants' alleged misconduct (and is redressable by the Court), she satisfies the "constitutional minimum of standing."  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).[2]

## C.   Fraud

Under Georgia law, a claim for fraud requires "(1) false representation by defendant; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff."  Ades v. Werther, 256 Ga. App. 8, 11 (2002).  Under Rule 9(b), allegations of fraud must "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  This

---

[2] Just because Plaintiff asserts an injury that can be said to be "fairly traceable" to alleged misconduct by Defendants does not mean that all of Defendants alleged misconduct has the necessary causal connection to Plaintiff's alleged injuries. Standing requires only *an* injury in fact that is fairly traceable to a defendant's alleged misconduct.  But *each* FCRA claim independently requires allegations "of damage resulting from [the] FCRA violation" as an element of the claim.  Nagle v. Experian Info. Sols., Inc., 297 F.3d 1305, 1307 (11th Cir. 2002).

means Plaintiff must plead "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380–81 (11th Cir.1997)).

Plaintiff's fraud claims fail. Starting with Defendant Nelnet, Plaintiff simply claims she is "being frauded by the defendant" via unspecified "fraudulent tactics and fraudulent schemes." [Doc. 76 at 13]. Her factual allegations, however, do not support a fraud claim. Plaintiff asserts Nelnet "had knowledge of the falsity" but never explains what supposedly false statement was made or how she supposedly relied on it. [Id. at 2]. Plaintiff was allegedly "maliciously induced" to submit a "Borrowers Defense to Loan Repayment" application, but she fails to include any allegations regarding who supposedly induced her to submit the application or how they did so. [Id. at 1–2]. Likewise, while Nelnet allegedly "makes profit from servicing fees for maintaining loans," Plaintiff never suggests Nelnet gained anything from Plaintiff submitting a "Borrowers Defense to Loan Repayment" application. [Id. at 12]. In short, Plaintiff fails to allege what false representation Nelnet allegedly made or what it supposedly

14

gained from Plaintiff submitting a "Borrowers Defense to Loan Repayment" application, and as such her fraud claim fails as a matter of law.  See Am. Dental Ass'n, 605 F.3d at 1291.

      With respect to Experian and Trans Union, Plaintiff fails to allege justifiable reliance on a false representation.  Instead, Plaintiff makes amorphous suggestions that she "relied on TransUnion to report accurate and complete information" and that she "had a right to rely on Experian to act in a manner that is fair."  [Doc. 74 at 8]; [Doc. 75 at 2].[3]  Trans Union and Experian have general obligations under the FCRA, but that does not demonstrate they defrauded Plaintiff.   Notably, Plaintiff fails to point to any precise statements or documents where Trans Union represented *to her* that it would "report accurate and complete information" or where Experian *told her* it would "act in a manner that is fair."  See [Docs. 74, 75].  Plaintiff cannot justifiably "rely" on representations that were never made to her, and as such her fraud claims against Trans Union and Experian also fail as a matter of law.

---

     [3] Plaintiff alleges that her Trans Union and Experian credit reports contain false information, but she never alleges she *relied* on those statements.  See [Docs. 74, 75]. That is presumably because Plaintiff "always knew these statements" were (allegedly) false, and thus Plaintiff could not justifiably rely on statements she knew were false. See Tran Chiropractic Wellness Ctr., Inc. v. Aetna Inc.,No. 8:14-CV-47-T-36EAJ, 2015 WL 144243, at *4 (M.D. Fla. Jan. 12, 2015).

**D.**   **The FCRA**

Plaintiff alleges Equifax and Trans Union violated 15 U.S.C. § 1681g by failing to provide her full file, and that they violated 15 U.S.C. § 1681i by failing to delete inaccurate information after a reinvestigation.  [Doc. 74 at 9]; [Doc. 75 at 17].[4]  As for Nelnet, Plaintiff contends it violated 15 U.S.C. § 1681s-2(b) by continuing to report inaccurate information after she disputed it with the credit bureaus.  [Doc. 76 at 13].  The undersigned addresses each claim in turn.

**1.**   ***The § 1681g Claims***

With some exceptions, when a consumer requests their full file, consumer reporting agencies are required to provide "[a]ll information in the consumer's file at the time of the request."  15 U.S.C. § 1681g(a)(1).  Plaintiff alleges she requested her full files from Experian and Trans Union but has not received either.  [Doc. 74 at 6]; [Doc. 75 at 17].  Experian and Trans Union, in turn, note that Plaintiff somehow miraculously attached to her Third Amended Complaint huge portions of the files she

---

[4] Plaintiff also brings a claim against Trans Union for an alleged violation of 15 U.S.C. § 1681e(b).  [Doc. 75 at 17].  The elements of a § 1681e(b) claim and a § 1681i claim are "the same, except that [§ 1681i does not require] that the agency prepared and distributed a report."  <u>Losch v. Nationstar Mortg. LLC</u>, 995 F.3d 937, 944 (11th Cir. 2021).  Because that "distinction is immaterial" for purposes of the Motion to Dismiss, the claims are analyzed together below.  <u>See</u> <u>id</u>.

claims she never received.  [Doc. 80-1 at 17–18]; see also [Doc. 74 at 13–66]; [Doc. 75 at 21–43].  In her response to the Motion to Dismiss, Plaintiff never explains how she has these portions of the file and stands by her assertion that she "still has not received her full file." [Doc. 83 at 28].  The Court need not address Plaintiff's assertion because her claim that she did not receive her full files is totally unconnected from any alleged damages.  Plaintiff simply says she "requested her full credit profile . . . and still has not received it," but does not assert that this alleged violation of § 1681g has injured her in any way, shape, or form.  [Doc. 74 at 6]; see also [Doc. 75 at 17].  Because Plaintiff has not "identified consequential harms from the failure to disclose the contested information," her § 1681g claims fail.  See Trichell v. Midland Credit Mgmt., Inc., 964 F.3d 990, 1004 (11th Cir. 2020); see also Taylor v. Screening Reps., Inc., 294 F.R.D. 680, 686 (N.D. Ga. 2013) (holding that a § 1681g claim failed as a matter of law because there was no connection between the plaintiff's "damages [and the defendant's] *failure to provide him with his complete file*" (emphasis in original)).

## 2. *The § 1681i Claims*

Pursuant to § 1681i(a), a consumer reporting agency ("CRA") must "make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer."  Cahlin v. Gen. Motors Acceptance Corp.,

936 F.2d 1151, 1160 (11th Cir. 1991).  To state a § 1681i(a) claim, a plaintiff must allege "a particular credit report contains a *factual* deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry."  Id. (emphasis in original).

Defendants argue Plaintiff's "conclusory allegations that [she] did not schedule a payment on her student loans or allegations as to payment amounts are insufficient to establish an inaccuracy," but they misstate Plaintiff's allegations.  See [Doc. 80-1 at 16].  To be sure, Plaintiff continues to misunderstand what a "Scheduled Payment Amount" is and she alleges "she had not scheduled any payments."  See [Doc. 74 at 4].  But she alleges more.  For example, Plaintiff alleges her last payment on a Westlake Financial loan "was $10,541.43" in March 2017, but that Experian misreported "the last payment as $352.00." [Doc. 74 at 7].  That is not a "conclusory allegation[ ]," and Defendants' conclusory assertion to the contrary does not make it so.  Construing the allegations in the light most favorable to Plaintiff, she also asserts her student loans should have been in forbearance from November 2017 to December 2019.  [Doc. 76 at 2–5].  During that timeframe, Trans Union and Experian reported—inaccurately, Plaintiff alleges—scheduled payment amounts on her student loans.  See [Doc. 74 at 14]; [Doc. 75 at 22].

18

In addition to purported inaccuracies, Plaintiff alleges the other elements of a § 1681i(a) claim too.  Plaintiff disputed the allegedly inaccurate information with Experian and Trans Union.  [Doc. 74 at 4]; [Doc. 75 at 7].  Nevertheless, the allegedly inaccurate information is still being reported.  See [Doc. 74 at 6]; [Doc. 75 at 7–8].  And contrary to Defendants' argument, Plaintiff does allege damages connected to the supposedly "fraudulent reporting."  See [Doc. 75 at 9–10].  Plaintiff may well have a difficult time proving any of her allegations, but at this stage the Court must allow a complaint to proceed "even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely."  Twombly, 550 U.S. at 556 (quotation marks omitted).[5]

Defendants also argue that, even assuming Plaintiff alleges an FCRA violation, her allegations are insufficient to support a claim for willfulness.  [Doc. 80-1 at 17].  Construing Plaintiff's allegations in the light most favorable to her and assuming they

---

[5] Of course, "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."  Fed. R. Civ. P. 56(b).  At summary judgment, Plaintiff will have to provide factual proof demonstrating, for example, that she actually paid $10,541.43 to Westlake Financial rather than the debt being "written off" or "charge[d] off," as the debt is reported.  See [Doc. 74 at 63–65].  And Plaintiff will have to prove that the alleged damages she complains of, such as owing money to the IRS, were actually caused by the supposedly "false information."  See [Doc. 74 at 2].  But at this stage, the Court must accept Plaintiff's allegations as true.

are true, Defendants' actions would have "either knowingly or recklessly violated the requirements of the [FCRA]" by acting in an "objectively unreasonable" manner.  See Levine v. World Fin. Network Nat. Bank, 554 F.3d 1314, 1318 (11th Cir. 2009) (quoting Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 56 (2007)).  At this stage, Plaintiff has adequately alleged both negligent and willful violations of § 1681i(a).

### 3.    *The § 1681s-2(b) Claim*

When a consumer disputes the accuracy of an item of information with a CRA, the CRA is required to notify the furnisher of the dispute.  15 U.S.C. § 1681i(a)(2). The furnisher must: (1) "conduct an investigation with respect to the disputed information"; (2) "review all relevant information provided by the [CRA]" in connection with the dispute; and (3) "report the results of the investigation to the [CRA]."  Id. § 1681s-2(b)(1).  If the disputed information is "inaccurate or incomplete or cannot be verified," the furnisher must modify, delete, or permanently block the reporting of that information.  Id. § 1681s-2(b)(1)(E).  The duties of a furnisher under § 1681s-2(b) are part of the larger "reinvestigation" conducted pursuant to § 1681i, so the "appropriate touchstone for evaluating a furnisher's investigation under § 1681s-2(b) is reasonableness."  Felts v. Wells Fargo Bank, N.A., 893 F.3d 1305, 1312 (11th Cir. 2018) (quotation marks omitted).

As noted above, the reporting of Plaintiff's student loan accounts is allegedly inaccurate, and Plaintiff disputed that reporting with Experian and Trans Union. After receiving notice of Plaintiff's dispute from a CRA, Nelnet allegedly "verified [the information] as accurate." <u>See</u> [Doc. 76 at 12]. And as discussed above, the supposedly inaccurate information caused Plaintiff a variety of actual damages. At this stage, Plaintiff has adequately alleged a § 1681s-2(b) claim. For the foregoing reasons, Defendants' Motion to Dismiss ([Doc. 80]) should be **GRANTED in part and DENIED in part**.

## **CONCLUSION**

For the reasons explained above, the Motion for Order ([Doc. 73]) is **GRANTED** *nunc pro tunc*, Plaintiff's Motion to Correct a Clerical Mistake ([Doc. 88]) is also **GRANTED** *nunc pro tunc*, Plaintiffs other Motions ([Docs. 81, 89, 91]) are **DENIED**, and the undersigned **RECOMMENDS** that the Motion to Dismiss ([Doc. 80]) be **GRANTED in part and DENIED in part**. Specifically, the undersigned **RECOMMENDS** that Plaintiff's fraud claims and her claims under 15 U.S.C. § 1681g be **DISMISSED** and that Defendant's Motion to Dismiss be **DENIED** in all other respects.

**SO ORDERED, REPORTED, AND RECOMMENDED**, this __27__ day of

April, 2022.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ENNIS UNITA MCWHORTER,

     Plaintiff,

v.

TRANSUNION LLC; NELNET
SERVICING LLC; EXPERIAN
INFORMATION SOLUTIONS, INC.,

     Defendants.

CIVIL ACTION FILE NO.
1:21-cv-01753-SDG-LTW

## <u>ORDER FOR SERVICE OF REPORT AND RECOMMENDATION</u>

The Report and Recommendation of the undersigned United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), N.D. Ga. Civ. R. 72.1(B), (D), and Standing Order 18-01 (N.D. Ga. Feb. 12, 2018), has been filed.  The Clerk is **DIRECTED** to serve upon counsel for the parties and directly upon any unrepresented parties a copy of the Report and Recommendation and a copy of this Order.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Report and Recommendation within **FOURTEEN (14) DAYS** of service of this Order.  Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to any transcripts if applicable) and

shall be served upon the opposing party.  The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court.  **If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the District Court, and on appeal, the Court of Appeals will deem waived any challenge to factual and legal findings to which there was no objection**, subject to interests-of-justice plain error review.  Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 11th Cir. R. 3-1 ("A party failing to object to a magistrate judge's findings or recommendations . . . waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.").

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**SO ORDERED**, this ___27___ day of April, 2022.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE